# EXHIBIT A

## To

## Notice of Removal

**RE:** Deone Dickson v. Vitas Healthcare Corporation of Illinois

FILED
2/26/2026 3:04 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH01881
Calendar, 10
36852092

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| DEONE DICKSON, Individually and For All Other Persons Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>VITAS HEALTHCARE CORPORATION OF ILLINOIS, a Delaware corporation<br><br>Defendant. | **2026CH01881**<br>**Case No.** _____<br><br>**Judge:**<br><br>**Jury Trial Demanded** |

### ORIGINAL CLASS ACTION COMPLAINT

#### SUMMARY

1. Deone Dickson (Dickson) brings this class action to recover unpaid wages and other damages from Vitas Healthcare Corporation of Illinois (Vitas) for violations of the Illinois Minimum Wage Law (IMWL) and the Illinois Wage Payment and Collection Act (IWPCA).

2. Vitas employed Dickson as one of its Hourly Employees (defined below) in Illinois.

3. Vitas pays Dickson and its other Hourly Employees by the hour.

4. Dickson and the other Hourly Employees regularly work more than 40 hours in a week.

5. But Vitas does not pay Dickson and its other Hourly Employees for all their hours worked.

6. Instead, Vitas automatically deducts 60 minutes a day from Dickson's and its other Hourly Employees' hours for so called "meal breaks," regardless of whether they actually receive a *bona fide* meal break (Vitas's "auto-deduct policy").

7. Thus, Vitas does not pay Dickson and the other Hourly Employees for that time.

1

FILED DATE: 2/26/2026 3:04 PM    2026CH01881

8.     But Dickson and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9.     Instead, Vitas requires Dickson and the other Hourly Employees to remain on duty and perform compensable work throughout their shifts, and subjects them to work interruptions during unpaid "meal breaks."

10.     Vitas's auto-deduct policy violates the IMWL by depriving Dickson and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all overtime hours worked.

11.     Likewise, Vitas's auto-deduct policy violates the IWPCA by depriving Dickson and the other Hourly Employees of their earned wages, at their agreed hourly rates, for all hours worked.

## JURISDICTION & VENUE

12.     This Court has jurisdiction over this matter because this action arises under Illinois law, and Vitas's violative conduct occurred in Illinois.

13.     This Court has personal jurisdiction over Vitas because (a) Vitas is a corporation registered in Illinois; (b) Vitas engaged in continuous and substantial business activity in Illinois during the relevant period, including operating healthcare facilities in Illinois and employing Dickson and the other Hourly Employees in Illinois; and (c) Vitas committed the statutory violations alleged in this Complaint in Illinois. 735 ILCS 5/2-209.

14.     Cook County is an appropriate venue for this class action because Vitas conducts substantial business in Cook County, including operating healthcare facilities and employing Hourly Employees. 735 ILCS 5/2-101(1); 735 ILCS 5/2-102(a).

15.     Finally, this matter is filed properly in this Court because the matter in controversy does not exceed $5,000,000, exclusive of interest and costs and there are fewer than 100 class members.

2

FILED DATE: 2/26/2026 3:04 PM   2026CH01881

**PARTIES**

16.     Dickson worked for Vitas as a Program Scheduler in Illinois from approximately April to July 2025.

17.     Throughout her employment, Vitas classified Dickson as non-exempt and paid her by the hour.

18.     Throughout her employment, Vitas subjected Dickson to its auto-deduct policy.

19.     Dickson brings this class action on behalf of herself and other similarly situated Vitas employees.

20.     The putative class of similarly situated employees under the IMWL is defined as:

> **All hourly employees who worked under Vitas's auto-deduct policy in Illinois at any time during the past 3 years through final resolution of this action (the "IMWL Class Members").**

21.     The putative class of similarly situated employees under the IWPCA is defined as:

> **All hourly employees who worked under Vitas's auto-deduct policy in Illinois at any time during the past 10 years through final resolution of this action (the "IWPCA Class Members").**

22.     The IMWL Class Members and the IWPCA Class Members are collectively referred to as the "Hourly Employees."

23.     Vitas is a Delaware corporation headquartered in Miami, Florida.

24.     Vitas may be served through its registered agent: **Illinois Corporation Service Company 801 Adlai Stevenson Drive, Springfield, Illinois 62703.**

**FACTS**

25.      Vitas touts itself "as a leader in the hospice movement in the United States," and employing more than 12,000 employees.[1]

---

[1] https://www.vitas.com/ *and* https://www.vitas.com/about-us/vitas-values (last visited February 24, 2025).

26.     To provide its patient care services, Vitas hires workers, like Dickson and the other Hourly Employees.

27.     Vitas classifies Dickson and its other Hourly Employees as non-exempt and pays them by the hour.

28.     While job titles and duties may differ, Dickson and the other Hourly Employees are subject to Vitas's same or similar illegal policy—its auto-deduct policy—while performing similar work.

29.     For example, Dickson worked for Vitas as a program scheduler from approximately April until July 2025.

30.     Dickson's job duties included answering the phone, assisting patient needs, scheduling patients, inputting patient information into Vitas's system, and generally assisting other staff in accordance with Vitas's policies and procedures.

31.     Vitas agreed to pay Dickson approximately $25 an hour for her first 40 hours worked and 1.5 times her regular rate of pay for hours worked in excess of 40 in a workweek.

32.     Throughout her employment, Vitas required Dickson to report her "on the clock" hours to Vitas.

33.     Vitas's records reflect Dickson's "on the clock" hours worked each workweek.

34.      Throughout her employment, Dickson typically worked approximately 8 hours a day and 5 days a week "on the clock" (40 hours a workweek).

35.     But throughout her employment, Vitas did not pay Dickson for all her hours worked.

36.     Instead, Vitas subjected Dickson to its auto-deduct policy.

37.     Specifically, Vitas automatically deducted 60 minutes a day from Dickson's recorded hours for so called "meal breaks."

38.     Thus, Vitas did not pay Dickson for that time.

4

39. But throughout her employment, Dickson did not actually receive *bona fide* meal breaks.

40. Instead, Vitas regularly required Dickson to perform compensable work throughout her shifts, including during so called "meal breaks."

41. Thus, as a result of its auto-deduct policy, Vitas failed to pay Dickson overtime wages for all her overtime hours worked during workweeks in which she worked in excess of 40 hours.

42. Likewise, as a result of its auto-deduct policy, Vitas failed to pay Dickson earned wages (at her agreed hourly rate) for all hours worked.

43. Dickson and the other Hourly Employees perform their jobs under Vitas's supervision and use materials, equipment, and technology Vitas approves and supplies.

44. Vitas requires Dickson and its other Hourly Employees to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

45. At the end of each pay period, Dickson and the other Hourly Employees receive wages from Vitas that are determined by common systems and methods that Vitas selects and controls.

46. Vitas requires Dickson and its other Hourly Employees to record their hours worked using Vitas's designated timekeeping system.

47. The other Hourly Employees typically work similar, 40+ hours "on the clock" workweeks.

48. Thus, just as Vitas's records reflect the number of hours Dickson worked "on the clock" each workweek, Vitas also maintains records of the number of hours the Hourly Employees work "on the clock" each workweek.

49. But, like Dickson, Vitas fails to pay its other Hourly Employees for all their hours worked.

5

50. Indeed, Vitas subjects its Hourly Employees to the same or similar auto-deduct policy it imposed on Dickson.

51. Specifically, just as with Dickson, Vitas automatically deducts 60 minutes a day from the other Hourly Employees for so called "meal breaks."

52. Vitas automatically deducts this time regardless of whether Dickson and the other Hourly Employees actually receive full, uninterrupted meal breaks.

53. Vitas simply assumes Dickson and the other Hourly Employees receive *bona fide* meal breaks each shift they work.

54. But, like Dickson, the other Hourly Employees do not actually receive *bona fide* meal breaks.

55. Instead, Vitas requires them to remain on duty and perform compensable work throughout their shifts, including during unpaid "meal breaks."

56. And, like Dickson, Vitas regularly subjects its other Hourly Employees to work interruptions during unpaid "meal breaks."

57. Because of these work interruptions, Dickson and the other Hourly Employees are not free to engage in personal activities during unpaid "meal breaks."

58. In other words, Dickson and the other Hourly Employees are not relieved of all their work duties during unpaid "meal breaks."

59. Rather, during unpaid "meal breaks," Dickson and the other Hourly Employees are forced to remain on duty and perform their regular work duties.

60. Thus, Dickson and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for Vitas's predominant benefit.

61. This unpaid time is compensable under the IMWL because Vitas knew, or should have known: (1) Dickson and its other Hourly Employees were performing unpaid work during "meal

6

breaks"; (2) they were interrupted with work duties, such as calls or patient interactions, during attempted "meal breaks"; (3) they were not completely relieved of all duties during unpaid "meal breaks"; (4) they entirely skipped "meal breaks" due to work demands; (5) unpaid "meal breaks" were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during unpaid "meal breaks" because of work interruptions; (7) they remained on Vitas's premises and under Vitas's supervision during their unpaid "meal breaks"; and/or (8) they spent their unpaid meal breaks performing their regular duties for Vitas's predominant benefit.

62.     This unpaid time is also compensable under the IWPCA because Vitas agreed to pay Dickson and its other Hourly Employees set hourly rates for all hours worked, and Vitas failed to pay them their earned wages at these agreed hourly rates for the work they performed during these on duty "meal breaks."

63.     Vitas fails to exercise its duty as Dickson's and the other Hourly Employees' employer to ensure these employees are not performing work that Vitas does not want performed during their unpaid "meal breaks."

64.     And Vitas knows, should know, or recklessly disregards whether Dickson and its other Hourly Employees routinely perform work "off the clock" during unpaid "meal breaks."

65.     Thus, Vitas required, requested, suffered, or permitted Dickson and its other Hourly Employees to work during unpaid "meal breaks."

66.     Despite accepting the benefits, Vitas does not pay Dickson and its other Hourly Employees for the compensable work they perform during their automatically deducted "meal breaks."

67.     Thus, under Vitas's auto-deduct policy, Dickson and the other Hourly Employees are denied wages, for on duty "meal breaks," including overtime wages during workweeks in which they work more than 40 hours.

7

FILED DATE: 2/26/2026 3:04 PM   2026CH01881

68. Likewise, under its auto-deduct policy, Vitas withholds earned wages from Dickson and the other Hourly Employees (at their agreed hourly rates) for on duty "meal breaks" in violation of the IWPCA.

## CLASS ACTION ALLEGATIONS

69. Dickson brings her claims as a class action on behalf of herself and the other Hourly Employees.

70. Like Dickson, the other Hourly Employees are victimized by Vitas's auto-deduct policy.

71. Other Hourly Employees worked with Dickson and indicated they were paid in the same manner, performed similar work, and were subject to Vitas's auto-deduct policy.

72. Based on her experience, Dickson is aware Vitas's auto-deduct policy was imposed on other Hourly Employees.

73. The putative class of Hourly Employees includes more than 40 members (but fewer than 100).

74. Thus, the putative class of Hourly Employees is so numerous that the joining of all class members in one lawsuit is not practicable.

75. The Hourly Employees are similarly situated in the most relevant respects.

76. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages for all hours worked and overtime wages of at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

77. The only relevant inquiry is whether the Hourly Employees were subject to Vitas's auto-deduct policy.

8

78.     Therefore, the specific job titles or locations of the Hourly Employees do not prevent class treatment.

79.     Rather, Vitas's auto-deduct policy renders Dickson and the other Hourly Employees similarly-situated for the purpose of determining their right to earned wages and overtime wages.

80.     Vitas's records reflect the number of hours the Hourly Employees recorded they worked each week "on the clock."

81.     Vitas's records further reflect it automatically deducted hours from the Hourly Employees' recorded work time for so called "meal breaks."

82.     The back wages owed to Dickson and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

83.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Vitas's records, and there is no detraction from the common nucleus of liability facts.

84.     Therefore, the issue of damages does not preclude class treatment.

85.     Dickson's experiences are therefore typical of the experiences of the other Hourly Employees.

86.     Dickson has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class treatment.

87.     Like each Hourly Employee, Dickson has an interest in obtaining the unpaid wages owed under Illinois law.

88.     Dickson and her counsel will fairly and adequately protect the interests of the other Hourly Employees.

89.     Dickson retained counsel with significant experience in litigating complex class actions.

9

FILED DATE: 2/26/2026 3:04 PM   2026CH01881

90.     A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.

91.     Absent this class action, many Hourly Employees will not obtain redress for their injuries, and Vitas will reap the unjust benefits of violating the IMWL and IWPCA.

92.     Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

93.     Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Vitas.

94.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

95.     Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

96.     The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

97.     Among the common questions of law and fact are:

(a)     Whether Vitas engaged in a policy and practice of automatically deducting from the Hourly Employees' recorded hours for "meal breaks";

(b)     Whether Vitas required, requested, suffered, or permitted the Hourly Employees to work during their unpaid "meal breaks";

(c)     Whether Vitas failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked in violation of the IMWL; and

(d)     Whether Vitas failed to pay the Hourly Employees all their earned

10

wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA.

98. As part of its regular business practices, Vitas repeatedly violated the IMWL and IWPCA with respect to the Hourly Employees.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
### PURSUANT TO 820 ILCS 105/1, *ET SEQ.*
### (IMWL CLASS)

99. Dickson brings her IMWL claims as a class action on behalf of herself and the other IMWL Class Members.

100. Vitas's conduct violates the IMWL (820 ILCS 105/1, *et seq.*).

101. At all relevant times, Vitas was subject to the IMWL because Vitas was (and is) an "employer" within the meaning of the IMWL. 820 ILCS 105/3(c).

102. At all relevant times, Vitas employed Dickson and the other IMWL Class Members as its covered "employees" within the meaning of the IMWL. 820 ILCS 105/3(d).

103. The IMWL requires employers, like Vitas, to pay non-exempt employees, including Dickson and the other IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek. 820 ILCS 105/4a.

104. Dickson and the other IMWL Class Members are entitled to overtime wages under the IMWL.

105. Vitas violated, and is violating, the IMWL by failing to pay Dickson and the other IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay — based on all remuneration—for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks. *See* 820 ILCS 105/4a.

11

106. Vitas's unlawful conduct harmed Dickson and the other IMWL Class Members by depriving them of the overtime wages they are owed.

107. Accordingly, Dickson and the IMWL Class Members are entitled to recover the difference between the overtime wages actually paid and the required overtime wages actually earned, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT II

### FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPCA
### PURSUANT TO 820 ILCS 115/1, *ET SEQ.*
### (IWPCA CLASS)

108. Dickson brings her IWPCA claim on behalf of herself and the other IWPCA Class Members.

109. Vitas's conduct violates the IWPCA (820 ILCS 115/1, *et seq.*).

110. At all relevant times, Vitas was subject to the IWPCA because Vitas was (and is) an "employer" within the meaning of the IWPCA.

111. At all relevant times, Vitas employed Dickson and the other IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

112. The IWPCA requires employers, like Vitas, to pay employees, including Dickson and the other IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

113. During the course of their employment, Vitas agreed to pay Dickson and each IWPCA Class Member an hourly rate for all the hours of work they performed.

114. Dickson and each IWPCA Class Member accepted Vitas's offer.

115. But during the course of their employment, Vitas failed to pay Dickson and the other IWPCA Class Members for all the time they worked at the hourly rates Vitas agreed to pay them

12

because Vitas failed to include the time that they worked during their automatically deducted "meal breaks" in their total number of hours worked in a given workweek.

116. Thus, Vitas violated, and is violating, the IWPCA by failing to pay Dickson and the other IWPCA Class Members all their earned wages (at the hourly rates Vitas agreed to pay them) for all the hours of work they performed for Vitas's benefit.

117. Vitas's unlawful conduct harmed Dickson and the other IWPCA Class Members by depriving them of the earned wages they are owed.

118. Accordingly, Dickson and the other IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

119. Dickson demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Dickson, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a) An Order allowing this action to proceed as a class action under the IMWL and IWPCA and certifying the putative class of Hourly Employees;

(b) An Order appointing Dickson and her counsel to represent the interests of the Hourly Employees;

(c) An Order finding Vitas liable to Dickson and the other IMWL Class Members for unpaid overtime wages owed under the IMWL, plus treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

13

FILED DATE: 2/26/2026 3:04 PM   2026CH01881

(d)   An Order finding Vitas liable to Dickson and the other IWPCA Class Members for unpaid earned wages owed under the IWPCA, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

(e)   An Order awarding attorneys' fees, costs, and expenses;

(f)   A Judgment against Vitas awarding Dickson and the other Hourly Employees all their unpaid wages, treble damages, monthly statutory damages, attorneys' fees, costs, expenses, and any other penalties available under the IMWL and IWPCA;

(g)   An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(h)   All such other and further relief to which Dickson and the other Hourly Employees may show themselves to be justly entitled.

14

FILED DATE: 2/26/2026 3:04 PM    2026CH01881

Dated: February 26, 2026

Respectfully submitted,

*/s/ Douglas M. Werman*
One of Plaintiff's Attorneys

Douglas M. Werman
dwerman@flsalaw.com
Maureen A. Salas
msalas@flsalaw.com
**WERMAN SALAS P.C.** (Firm ID: 42031)
77 W. Washington St., Ste 1402
Chicago, IL 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

Michael A. Josephson*
mjosephson@mybackwages.com
Andrew W. Dunlap*
adunlap@mybackwages.com
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Ste 3050
Houston, TX 77046
Phone: (713) 352-1100
Fax: (713) 352-3300

Richard J. (Rex) Burch*
rburch@brucknerburch.com
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Ste 3025
Houston, TX 77046
Phone: (713) 877-8788
Fax: (713) 877-8065

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR DICKSON AND THE HOURLY EMPLOYEES**

15