UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| Deone Dickson, individually and for all other persons similarly situated,<br><br>　　*Plaintiff,*<br><br>v.<br><br>Vitas Healthcare Corporation of Illinois,<br><br>　　*Defendant.* | No. 26 CV 3741<br><br>Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Plaintiff Deone Dickson, on behalf of herself and a proposed class of all those similarly situated, brings suit against her former employer, Defendant Vitas Healthcare Corporation under the Illinois Wage Payment and Collection Act (IWPCA). She alleges that Vitas violated the Act by deducting sixty minutes a day from her wages for an unpaid "meal break," regardless of whether Vitas actually provided her such break. Vitas moves to dismiss Dickson's complaint. The motion to dismiss is denied.

## I.　Background[1]

Dickson worked for Vitas Healthcare as a program scheduler from about April 2025 until July 2025. [Dkt. 1-1, ¶ 29.][2] Her duties included answering the phone, assisting and scheduling patients, inputting patient information into Vitas's system, and other responsibilities in accordance with Vitas's procedures and policies. [*Id.*, ¶ 30.] Vitas classified Dickson as a non-exempt employee and agreed to pay her an hourly wage of $25. [*Id.*, ¶ 31.] And when Dickson worked more than 40 hours per week, Vitas agreed to pay her an overtime wage of 1.5 times her regular rate of pay. [*Id.*]

Vitas required Dickson to report her "on the clock" hours. [*Id.*, ¶ 32.] She typically recorded eight hours of "on the clock" work per day, five days a week. [*Id.*, ¶¶ 33-34.] Vitas did not pay her for each recorded hour, however. Instead, she alleges

---

[1]　The following factual allegations are taken from Dickson's complaint [Dkt. 1-1] and are accepted as true for purposes of the motion. See *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. See *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

[2]　Citations to docket filings generally refer to the electronic pagination supplied by CM/ECF, which may not be consistent with page numbers in the underlying documents.

that Vitas subjected her to its "auto-deduct policy," in which it deducted 60 minutes a day from her recorded time for so-called "meal breaks." [*Id.*, ¶¶ 35-36.]

But according to Dickson, Vitas did not offer her "bona fide meal breaks." [*Id.*, ¶ 39.] To the contrary, Vitas regularly required her to "remain on duty and perform compensable work" during her entire shift, often interrupting any supposed meal break. [*Id.*, ¶¶ 55, 59.] In short, Vitas did not relieve Dickson of her work duties at any point during her shift but still automatically deducted 60-minutes for an unpaid meal break. [*Id.*, ¶¶ 51-60.]

Asserting that Vitas's auto-deduct policy violates the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act, Dickson filed this putative class action in state court. [Dkt. 1-1 at 1.] Vitas then removed the case to federal court pursuant to 28 U.S.C. § 1446(a). [Dkt. 1.]

## II.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). At the motion to dismiss stage, the court adopts a plaintiff-friendly approach and accepts all well-pleaded facts as true and draws all reasonable inferences in plaintiff's favor. *Id.* at 600. The court assesses the complaint's plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III.   Analysis

The Illinois Wage Payment and Collection Act requires employers to pay their employees all wages earned during the pay period. ILCS 115/3. The Act defines wages narrowly as compensation an employer owes an employee "pursuant to an employment contract or agreement between the 2 parties." ILCS 115/2; *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 567 (7th Cir. 2016). In other words, the IWPCA creates no substantive right to compensation. Any claim for unpaid wages, then, must be grounded in an employment contract or agreement. *Enger*, 812 F.3d at 570; *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021).

An agreement, the Seventh Circuit has explained, is something less than a "formally negotiated contract." *Das v. Tata Consultancy Services Ltd.*, 118 F.4th 903, 907 (7th Cir. 2024) (quoting *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051 (Ill. App. Ct. 2005)). Indeed, an agreement is merely a manifestation of mutual assent. *Id.*; *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). So to establish an agreement at the pleading stage, a plaintiff need only "plead facts

showing mutual assent to terms that support recovery." *Das*, 118 F.4th at 907 (quoting *Bradley v. Village of Univ. Park*, 59 F.th 887, 904 (7th Cir. 2023)).

Dickson sufficiently pleads facts entitling her to relief under the IWPCA. That is, she alleges that (1) Vitas agreed to pay her $25 per hour for every hour she worked, and (2) Vitas did not pay her for so-called "meal breaks" during which she was required to perform work.

Vitas sees things differently. It does not deny the existence of a general agreement to pay Dickson for all hours worked, but it argues that such an agreement is insufficient under the Act. According to Vitas, Dickson must allege that it specifically agreed to pay her for work performed during the automatically deducted meal breaks to establish mutual assent. In addition, Vitas asserts the parties' conduct demonstrates a lack of mutual assent.

First, Vitas reads the IWPCA too narrowly in claiming Dickson needs to allege a more specific agreement to entitle her to compensation for work done during meal breaks. Courts frequently allow IWPCA claims to proceed based on general agreements to compensate an employee for every hour worked if the plaintiff is seeking compensation for performing their typical work duties. See *Graves v. Franciscan Alliance*, 2025 WL 674082, at *4 (S.D. Ind. Mar. 3, 2025) (denying motion to dismiss an IWPCA claim because plaintiff sufficiently alleged a general hourly rate agreement and asserted that she was required to perform her ordinary duties during automatically deducted, unpaid meal breaks); *Gomez v. El Milagro, Inc.*, 2025 WL 582211, at *4 (N.D. Ill. Feb. 24, 2025).

On the other hand, courts have dismissed claims, finding a lack of mutual assent, when plaintiffs seek compensation for ancillary activities or other work-related activities not readily contemplated by the parties' agreement. See *Chagoya*, 992 F.3d at 624-25 (affirming summary judgment for defendant because no agreement existed to compensate the plaintiffs for ancillary activities such as their commute); *Brown v. Lululemon Athletica*, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011) (denying recovery to plaintiff despite a general agreement to be paid hourly for all work done because she sought compensation for ancillary activities, such as attending exercise classes and listening to a motivational CD).

With these principles in mind, Vitas's reliance on *Loonsfoot v. Stake Center Locating* is misplaced. 2024 WL 3568655 (S.D. Ill. July 29, 2024). In *Loonsfoot*, the plaintiff alleged that his employer agreed to pay him for all hours worked but that he was not actually paid for all off-the-clock work, including during unpaid meal breaks. *Id.* at *5. Here, Dickson is not seeking compensation for work-related activities performed during her lunch break. She alleges that Vitas did not offer her bona fide meal breaks but instead, regularly required her to "remain on duty and perform compensable work" during her entire shift, often interrupting any meal break. [*Id.*, ¶¶ 39, 55, 59.]

Viewed in that way, Dickson's allegations are more comparable to those made in *Graves*. In *Graves*, the employer argued that the general hourly-rate agreement did not entitle the employee to compensation for work done during automatically deducted meal breaks. 2025 WL 674082 at *3. The court disagreed on two grounds. First, the court recognized that the employee included detailed factual allegations regarding a general agreement to be paid according to an hourly rate, her typical work schedule, and the exact duties she performed: providing healthcare services, facilitating patient care, and responding to patient emergencies. *Id.* at *4. The court observed that the duties specified in her complaint were "the same particular work allegedly performed that she claimed [the defendant] failed to pay her for." *Id.* (cleaned up). In other words, the plaintiff in *Graves* sought compensation according to a general agreement for her ordinary work duties and supported her claim with additional details.

Here, Dickson alleges that she performed her ordinary job functions with the same or greater level of specificity than the plaintiff in *Graves*. She alleges the hourly rate Vitas agreed to pay her ($25 per hour) and describes the specific duties her job typically entailed, i.e., answering the phone, assisting and scheduling patients, inputting patient information into Vitas's system, and other responsibilities in accordance with Vitas's procedures and policies. She also alleges that it was those exact duties that Vitas required her to perform during meal breaks.

Second, the court in *Graves* refused to dismiss the employee's claim because the employer *required* her to perform her ordinary job duties during meal breaks. *Id.* The employer's mandate differentiated *Graves* from *Gomez v. El Milagro*, where an employee *chose* to work through his meal break voluntarily. *Id.* That is, by "forcing [an employee] to remain on-the-clock during their lunch break, there is an implicit understanding that the employer assented to compensation for the work." *Id.*

Dickson, too, asserts that Vitas required her to perform her typical job duties during her "meal breaks." And while Vitas may have specified that each shift would include a 60-minute, unpaid meal break, it did not provide that break, at least according to the complaint. In short, these allegations are sufficient to infer an agreement that she be paid for all hours performing her typical duties, including any work performed during meal breaks.

Vitas next argues that the parties' conduct negates mutual assent. When evaluating a plaintiff's claim, courts often begin by attempting to identify an explicit agreement between the parties. See *Loonsfoot,* 2024 WL 3568655, at *5; *Landers-Scelfo*, 827 N.E.2d at 1059; *Reed v. Positive Connections*, 2016 WL 4394166, at *2 (N.D. Ill. Aug. 16, 2016). But if the plaintiff fails to adequately allege an explicit agreement—perhaps through ambiguity or conclusory allegations—or only alleges an implicit agreement, then the court may consider the parties' conduct. See *Landers-Scelfo*, 827 N.E.2d at 1059 (finding that an agreement may be entirely implicit, in which case the court may analyze the parties' conduct).

4

In *Loonsfoot*, for example, the plaintiff failed to establish an explicit agreement that demonstrated entitlement to compensation for work performed during his lunch break. 2024 WL 3568655 at *6. Finding no explicit agreement, the court analyzed the parties' conduct to determine whether the parties had formed an implicit agreement concerning the work-related tasks. *Id.* The answer was no. *Id.* Quite the opposite: the plaintiff had worked for the employer for about a year and a half without protesting or complaining about the employer's practice of nonpayment. If anything, the court explained, the employee's acquiescence suggested assent to nonpayment. See *id.*; see also *Brashear v. SSM Health Care Corp.*, 2022 WL 17987041 at *3 (E.D. Mo. 2022) (finding no implicit agreement because plaintiff did not protest, challenge, or otherwise disagree with the employer's practice of nonpayment in her two years of employment).

Vitas asserts a lack of mutual assent is clear here because, like the plaintiffs in *Loonsfoot* and *Brashear*, Dickson failed to protest Vitas's practice of not paying employees for work done during lunch while she was employed by Vitas. Not so.

For starters, unlike the plaintiffs in *Brashear* and *Loonsfoot*, Dickson alleged that the parties had an explicit agreement that she be paid for every hour spent performing her work duties. And in any event, the plaintiffs in those cases worked for their employer for more than a year and a half without protesting the employer's practice of failing to pay them for work done during lunch. *Loonsfoot*, 2024 WL 3568655 at *6; *Brashear*, 2022 WL 17987041 at *3. Dickson, on the other hand, only worked for Vitas for about two months. By forcing her to perform work during her meal break, moreover, Vitas's conduct suggests "an implicit understanding" that it "assented to compensation for the work." *Graves*, 2025 WL 674082, at *5.

All told, Dickson's complaint sets forth a general agreement which included sufficient details such as her hourly rate; the core duties of her job; and that Vitas required her to perform those core duties in lieu of a meal break. She then alleges that Vitas failed to pay her the hourly rate for that work. At the pleading stage, that's enough.

## IV.   Conclusion

For these reasons, the court denies Vitas's motion to dismiss.

Enter: 26-cv-3741
Date:   June 23, 2026

_____
Lindsay C. Jenkins

5